## Commonwealth v. Gies.

*Criminal law—Liquor violations—Costs of prosecution—Act of March 27, 1923.*

1. An order placing the costs of a prosecution brought under the Prohibition Enforcement Act of March 27, 1923, P. L. 34, by a State policeman upon the prosecutor will be stricken off and the costs placed on the county when the prosecution was brought in good faith.

2. Prosecutions for violation of the liquor law by prohibition officers or members of the State police should not be begun without first submitting the evidence to the district attorney and securing his approval.

Rule to show cause why costs should not be placed on Northampton County. Q. S. Northampton Co., Feb. Sess., 1924, No. 43.

*Robert E. James,* District Attorney, for rule.

STOTZ, J.—All of these cases were prosecutions brought under the Prohibition Enforcement Act. The prosecutors are members of the State constabulary. The prosecutions were instituted by these officers independent of, and

without consultation with, the district attorney's office. There was no conference between the officers and the district attorney before the complaints were made with respect to the sufficiency and the character of the evidence against the defendants upon which to base the complaints, and all of the prosecutions were instituted without the district attorney's knowledge or consent.

We have made an examination of the records kept by the clerk of the court, and find that fifty-one cases of this character have been disposed of during the first half of this year in our court, with the following results:

(a) In ten cases the grand jury ignored the bills of indictment and placed the costs on the prosecutors.

(b) In one case the bill was ignored and the costs placed on the county.

(c) In eight cases the defendants were acquitted by direction of the court for want of sufficient evidence.

(d) In one case the defendant was acquitted by the jury and costs put on the county.

(e) In twenty-five cases the defendants were acquitted by the juries and the costs, either in whole or in part, imposed on the prosecutors.

(f) In four cases the defendants pleaded guilty.

(g) In two cases the defendants were found guilty by the juries.

It will be seen, therefore, that out of fifty-one prosecutions, only six resulted in conviction, four of those being by plea of guilty. All the rest were abortive.

What do the costs of these forty-five unsuccessful cases, which the county will be called upon to pay, amount to? The aggregate sum, as shown by the records of the court, is $3185.14. But this is not all. To this must be added the fees of the chemist who analyzed the samples of liquor and testified at the trials. According to the figures furnished by the controller's office, these fees amount to $1310. This makes a total of $4495.14. In addition to this, we have the regular or usual expense which the county sustains in running the court for the trial of these cases.

Why have all these cases resulted in failure? It has not been because of any lack of earnestness or efficiency in the district attorney's office. He and his assistants produced and presented to the several juries, faithfully and competently, all the evidence which the State constables placed at their disposal. Nor do we believe that the people of Northampton County have such a disregard for the law, even a law with which they may not be in sympathy, that the jurymen and jurywomen, who are drawn from the whole body of the county, and who represent varied shades of opinion, would consciously and intentionally violates their oaths as jurors to save the defendants from the penalty of conviction, if they were satisfied of their guilt.

The real reason, we are convinced, why the juries have failed to convict is that the evidence produced by the Commonwealth has been so unsatisfactory in character that they would not accept it implicitly. The law is that a person accused of crime shall be convicted only if the jury trying him is satisfied beyond a reasonable doubt of his guilt. This law is at least as well settled and as important to the citizens as the law under which these prosecutions were brought. What was the scope of the Commonwealth's evidence in most, if not all, of these cases? It consisted of the unsupported and uncorroborated testimony of just one man, a State constable, who said that he bought liquor from the defendant. This was met by the explicit denial of the defendant. The question of the credibility of witnesses is, under the law, one solely for the jury. In the face of the defendant's denial, the uncorroborated word of the constable did not satisfy them. They were not convinced beyond a reasonable doubt. In fact, they evidently placed no confidence whatever in the con-

stable, otherwise they would not have gone so far as to impose the costs on him.

In the last analysis, the enforcement of criminal laws is in the hands of the people, acting through juries. If there exists a disinclination on their part to enforce a law in which they do not believe, it is all the more essential that the evidence of violations should be clear and convincing. Repeated prosecutions which end only in failure still further weaken respect for the law and encourage the spread of more violations. It is worse than futile to bring these prosecutions without sufficient evidence to support them. It is vicious and demoralizing and it puts the county to a useless expense. No prosecutions of this character, especially when instituted by persons who are sent into the county for that purpose, and who are paid for doing so, even if they are members of the State police, should be begun without first submitting the evidence to the district attorney and getting his approval. This would, at least in a large measure, forestall the spectacle we have had in our court during recent months, save the taxpayers' money and promote respect, instead of disrespect, for the law.

In making these rules absolute and placing the costs of these cases on the county, we want it understood, therefore, that this is not to be taken as a precedent for future cases.

Now, July 7, 1924, rules absolute.

From Henry D. Maxwell, Easton, Pa.